# UNITED STATES DISTRICT COURT

# DISTRICT OF SOUTH CAROLINA

# COLUMBIA DIVISION

| | |
|---|---|
| **Janet H. Bate,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **COMPLAINT** |
| ) | **(Jury Trial Demanded)** |
| **James Michael Shortt,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

Plaintiff, complaining of the Defendant herein, would show unto the Court as follows:

### JURISDICTION

1. This action personal injury in the United States District Court on the basis of diversity of citizenship pursuant to 28 U.S.C. § 1332(a).

### THE PARTIES

2. Plaintiff, Janet H. Bate (hereafter "Ms. Bate"), is a resident of and domiciled in Richland County, South Carolina. She is the widow of the late Michael Andrew Robertson Bate (hereafter "Mr. Bate").

1

3.     Defendant James Michael Shortt (hereafter "Defendant Shortt") is, upon information and belief, a resident of and domiciled in the State of California and previously practiced medicine in the State of South Carolina until his license to practice was suspended by the State Board of Medical Examiners on April 13, 2005.  All medical services rendered by Defendant Shortt set forth herein were delivered in South Carolina and within the scope and course of Defendant Shortt's medical treatment.

**FACTUAL BACKGROUND**

4.     Ms. Bate first encountered Defendant Shortt in November 2003 when she went with her husband, Mr. Bate, for an appointment he had with Defendant Shortt.  Defendant Shortt then proposed the use of expensive, unproven, and potentially dangerous therapies for Mr. Bate.  Recognizing that Ms. Bate could also be an additional revenue source for him, Defendant Shortt persuaded Ms. Bate that she also had medical conditions that could be effectively treated with his dubious therapies and products sold out of his office.

5.     Over the ensuing months, Defendant Shortt administered costly and unproven therapies to Ms. Bate, including multiple intravenous administrations of hydrogen peroxide.  Ms. Bate incurred thousands of dollars in charges for Defendant Shortt's worthless therapies.

6.     In April 2004, Defendant Shortt drew a sample of Ms. Bate's blood and sent it to Bowen Research and Training Institute, Inc. (hereafter "Bowen") to test for Lyme disease.  Defendant Shortt also arranged for Mr. Bate's blood to be tested by Bowen for Lyme disease as well.  Bowen, based in Palm Harbor, Florida, was an uncertified laboratory not authorized to conduct laboratory testing and its Lyme disease test was not approved for use by the United States Food and

Drug Administration. Bowen, in fact, reported that 100% of the patients tested were found to have Lyme disease.

7. Bowen, quite predictably, found that both Mr. and Mrs. Bate had Lyme disease, and Defendant Shortt utilized this "diagnosis" to justify costly treatments, medicines, and products to treat this newly diagnosed condition. Defendant Shortt informed the Bates that Ms. Bate had been infected by her husband through sexual transmission, despite the fact that there is no credible medical evidence that Lyme disease can be transmitted by sexual contact. Defendant Shortt used this same scheme with Bowen to diagnose other patients of his with Lyme disease and failed to report any of his dubious diagnoses of Lyme disease to the South Carolina Department of Health and Environmental Control, as required by South Carolina law. Upon information and belief, Defendant Shortt at one time was treating more patients with supposed Lyme disease than were diagnosed that same year in the entire State of South Carolina.

8. In or about June 10, 2004, Defendant Shortt prescribed to Mr. Bate a compounded ointment including testosterone, despite the fact that Mr. Bate was on therapy from his oncologist to eliminate testosterone in his body because it is known to fuel and advance prostate cancer. Defendant Shortt undertook this therapy without advising Mr. Bate's treating oncologist and knew or should have known that the introduction of testosterone would almost certain produce rapid advancement of Mr. Bate's cancer and severe emotional distress on Mr. Bate and his wife.

9. Shortly after taking the prescribed testosterone, Mr. Bate manifested distinctive clinical changes and his PSA level, a measure of his prostate cancer, increased fivefold in two weeks. Mr. and Mrs. Bate experienced severe emotional distress upon the realization that Mr. Bate's cancer was now raging out of control and would soon cause his death. In fact, Mr. Bate was admitted to

the hospital almost a month after first taking Defendant Shortt's prescription for testosterone and died on July 21, 2004.

10. In the course of Mr. Bate's last hospitalization, he informed his oncologist, Dr. Baldwin, that Defendant Shortt's had diagnosed him with Lyme disease. Dr. Baldwin then consulted infectious disease specialists, who conducted legitimate and approved diagnostic laboratory tests and concluded that Mr. Bate did not have Lyme disease. After Mr. Bate's death, Ms. Bate went to her own family physician, who also conducted legitimate and approved diagnostic tests and concluded that Ms. Bate did not have Lyme disease.

11. On April 13, 2005, the South Carolina Board of Medical Examiners suspended the medical license of Defendant Shortt, concluding that his "actions rendered him unfit to practice medicine and constituted a serious threat to the public health, safety, or welfare. . .". Among the practices and acts cited by the Board of Medical Examiners to support its decision included the following:

    a. Defendant Shortt "prescribed testosterone for a terminally ill prostate cancer patient;"

    b. Defendant Shortt "diagnosed and treated patients for Lyme disease based only on the results of tests by an unaccredited, out-of-state laboratory with a 100% positive rate for Lyme disease" and "did not report the alleged Lyme disease cases to DHEC, as required by law. . .;" and

    c. Defendant Shortt "regularly infused patients with intravenous hydrogen peroxide. . .".

12. Plaintiff demands a trial by jury.

**FIRST CAUSE OF ACTION**
(Negligence, Gross Negligence, Wilful, Wanton, and Reckless Conduct)

13.     Plaintiff realleges paragraphs 1-12 as if set out verbatim herein.

14.     Defendant Shortt was negligent, grossly negligent, wilful, wanton, and reckless in the following particulars, with each subparagraph sufficient to support the relief sought:

    a.     Ordering a laboratory study for Lyme disease from an uncertified laboratory utilizing an unapproved test with a known history of 100% positive Lyme disease findings;

    b.     Ordering treatment for Lyme disease without proper diagnostic work-up;

    c.     Administering intravenous hydrogen peroxide therapy; and

    d.     Undertaking courses of treatment without medical justification primarily motivated by the potential income derived from the patient.

**SECOND CAUSE OF ACTION**
(Outrage)

15.     Plaintiff realleges paragraphs 1-14 as if set out verbatim herein.

16.     Defendant Shortt's conduct in ordering testosterone for his Stage IV prostate cancer patient, Mr. Bate, thereby countermanding the prescribed course of treatment of Mr. Bate's oncologist, was undertaken intentionally and recklessly and was substantially certain to produce and did produce severe emotional distress to Ms. Bate.  Defendant Shortt's conduct was extreme and outrageous, grossly departing from any semblance of routine and customary medical practice, and was beyond all bounds of decency.

**DAMAGES**

17. As the direct and proximate result of the Defendant's acts and/or omissions as set forth above, Ms. Bate has expended significant funds on worthless therapies, suffered unnecessary side effects, and has experienced severe emotional distress.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays unto the Court for the following relief:

A. Actual damages against Defendant in an appropriate amount in excess of $75,000.00;

B. Punitive damages against Defendant in an appropriate amount; and

C. Such other and further relief as the Court deems just and proper.

GERGEL, NICKLES & SOLOMON, P.A.

BY: s/Richard Mark Gergel
Richard Mark Gergel
Fed. I.D. #1027
W. Allen Nickles, III
Fed. I.D. #2541
P. O. Box 1866
1519 Richland Street
Columbia, South Carolina 29202
(803) 779-8080
ATTORNEYS FOR PLAINTIFF

March 3, 2006

6